IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. <u>2:17cr114</u>

RICHARD ALLEN PATTERSON

<u>**DEFENDANT RICHARD PATTERSON'S POSITION WITH RESPECT TO SENTENCING FACTORS**</u>

COMES NOW the defendant, Richard Allen Patterson, and as and for his Position With Respect To Sentencing Factors, respectfully states the following:

**I.**

<u>**GUIDELINES CALCULATIONS AND PRESENTENCE REPORT (PSR) OBJECTIONS**</u>

A.     <u>The defendant objects to the proposed enhancement for a leadership role in the offense</u>.

USSG Section 3B1.1 (a) states that, "If the defendant was an organizer or leader of a criminal activity that involves five or more participants or was otherwise extensive, increase by 4 levels."

Although the PSR proposes such an enhancement at Paragraph 33, page 12, defendant respectfully submits that the evidence does not support that there were either "five or more participants" or that the "criminal activity... was otherwise extensive."

Because of the absence of these factual underpinnings, the defendant respectfully submits the 4-level enhancement for a proposed leadership role should be stricken.

B.     <u>The defendant objects to the proposed enhancement for obstruction of justice</u>.

The PSR proposes an enhancement for obstruction of justice under USSG Section 3C1.1.

However, the defendant has already pleaded guilty to the offense of obstruction of

1

justice in violation of USC Section 1512 (c) (2) (Count 8).

Accordingly, inasmuch as the offense to which the defendant pled guilty in this regard necessarily includes within its offense conduct (and, *a fortiori*, the offense characteristic of obstruction of justice), to further enhance the defendant for obstruction of justice amounts to a "double counting" situation under the Guidelines.

Since the defendant can only be enhanced once for alleged obstruction of justice, and since he has already pleaded guilty to that charge, the base offense level for which necessarily includes within its calculation the offense characteristic of obstruction of justice, further enhancement would, again, in the view of the defense, constitute an impermissible double counting.

Additional support for this position is found under Section 3C1.1, Commentary, Application Note 7, which states as follows:

> If the defendant is convicted of an offense covered by…
> §2J1.2 (Obstruction of Justice)… this adjustment is not to be
> applied to the offense level for that offense except if a
> significant further obstruction occurred during the investigation,
> prosecution, or sentencing of the obstruction offense itself (*e.g.*,
> if the defendant threatened a witness during the course of the
> prosecution for that offense).

Because no such "significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself," Application Note 7 applies to the instant case as well.

For these reasons, the defendant respectfully submits that the proposed obstruction enhancement should also be stricken.

C.    The defendant objects to the proposed denial of a downward adjustment acceptance for responsibility.

The defendant has accepted factual responsibility for the offenses at issue. More

specifically, as detailed in PSR at Paragraph 35, page 12:

> The defendant was interviewed by the probation officer and provided a statement where he acknowledged involvement in the instant offenses.  The defendant reviewed and briefly reiterated the contents of the Statement of Facts and agreed to its accuracy.  He stated that he is remorseful for his involvement in the instant offenses.  He stated, "I'm sorry all this happened and that I have put my family through all of this."

Accordingly, based on the defendant's pleas of guilty, and his factual acceptance of responsibility under PSR Paragraph 34, the defendant certainly qualifies for acceptance.

Moreover, USSG Section 3E1.1, Commentary, Application Note 1 (G), which Guideline section addresses acceptance of responsibility, states as follows:

> 1.  In determining whether a defendant qualifies... appropriate considerations include, but are not limited to, the following: ... (G) post-offense rehabilitative efforts (*e.g.* counseling or drug treatment)...

The PSR certainly documents considerable efforts by the defendant at counseling and drug treatment while incarcerated post-offense in an effort to rehabilitate himself.

While it is true that, according to USSG § 3E1.1, Commentary, Application Note 4., that:

> Conduct resulting in an enhancement under §3C1.1 (Obstruction or Impending the Administration of Justice) <u>ordinarily</u> indicates that the defendant has not accepted responsibility for his criminal conduct.  There may, however, be <u>extraordinary cases</u> in which adjustments under both § §3C1.1 and 3E1.1 may apply.

(emphasis added).

The defendant respectfully submits that this is one of those "extraordinary cases in which adjustments under both § §3C1.1 and 3E1.1 may apply."

First, as pointed out above, the defendant has in fact accepted responsibility for the very obstruction of justice offense (Count 8) for which he has pleaded guilty.  Therefore,

because obstruction of justice is a part and parcel of the actual offense itself, and because the defendant has accepted responsibility for same through his guilty plea and statements to the Probation Officer at PSR Paragraph 35, he has in fact accepted responsibility even for the obstruction offense and therefore should be given the credit ordinarily awarded for acceptance of responsibility which just happens in this case to include an obstruction of justice offense.

Second, to the extent that the obstruction of justice conduct is mitigated and extenuated by defendant's extensive mental health and psychiatric history, further detailed in the PSR as well as in the competency evaluation report received by the Court earlier, and which includes, but is not limited to, the emotional sequelae to the horrific sexual molestations to which he was exposed in his earlier years, the Court should also find that there are "extraordinary" circumstances that justify the award of acceptance nonetheless.

Otherwise stated, to the extent that the obstruction conduct was to some degree affected or influenced by mental health and psychiatric entities, the defendant should not be penalized for emotional conditions over which he has little if any control and, therefore, falls within the category of one of those "extraordinary cases in which" the obstruction and acceptance of responsibility adjustments should apply.

Finally, to the extent that the Court finds, based upon the immediate preceding objection, that the obstruction enhancement in any event should not apply because of the "double counting" and related arguments made above, then the suggestion that an obstruction enhancement and an acceptance adjustment "ordinarily" do not co-exist, would no longer be applicable since the obstruction enhancement itself would have been stricken.

Accordingly, for these reasons, defendant respectfully submits that the adjustment for acceptance should be awarded.

## SECTION 3553 (a) FACTORS

18 U.S.C. Section 3553 (a) directs that, "The court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of that subsection.  The defendant respectfully submits that a sentence of 54 months (4 years, 6 months), under all of the facts and circumstances of this case, is sufficient but not greater than necessary.

### Nature and Circumstances of the Offense

The defendant has pleaded guilty to a charge involving a felon in possession of firearms, which has also been characterized as a so-called "status offense," as well as to obstruction of justice.

While counsel does not make light of the fact that the firearms charge is a status offense, counsel has always taken the position that while serious, the mere possession of a firearm(s), otherwise lawful, that is made unlawful because of a person's status as a citizen (convicted felon) is not in and of itself a particularly aggravated offense.  Where such a status offense can become more aggravated, of course, is when the firearm is possessed by a convicted felon contemporaneously with or in furtherance of the commission of another offense, such as a crime of violence with the subject firearm, none of which circumstances are present here.

In sum, the defendant had what would otherwise be constitutionally protected items that he should not have had because of his status. Standing alone, under the circumstances of this case, the defendant respectfully submits that a sufficient sentence of nearly 5 years (54 months) is sufficient but not greater than necessary.

The defendant has accepted full factual responsibility for his actions.  The PSR indicates that the defendant "acknowledged involvement in the instant offense," agreed to

the accuracy of the Statement of Facts, and expressed remorse for his involvement in the offenses. (PSR at paragraph 35)

Accordingly, based on all of the foregoing, the defendant respectfully submits that the nature and circumstances of the offense support the conclusion that a sentence of nearly 5 years (54 months) is sufficient but not greater than necessary under the circumstances.

<u>History and Characteristics of Defendant</u>

The defendant is 48 years old (his birthday was this past Sunday), and was born in Norfolk as the oldest of 2 children of George Patterson, III and his wife, Denise.  (PSR at Paragraph 102).

When the defendant's parents divorced when he was approximately 5 years old, he remained in his mother's custody, including when his mother ultimately married one Robert Gallup.

The defendant advises that shortly after Mr. Gallup moved in, Mr. Gallup "began sexually abusing" the defendant. When the defendant's aunt and uncle confronted Mr. Gallup in the defendant's presence, the defendant "recanted the accusations and decided to suppress the experiences." However, Mr. Gallup "continued to sexually abuse" the defendant.  Ultimately, at age 14, the defendant's mother sent him to live with Mr. Gallup, who attempted again to sexually abuse him.  However, the defendant at that point "was able to stand up to Gallup and the abuse stopped."  Eventually, justice was served and "Gallup was convicted of three counts of Aggravated Sexual Battery." (PSR at Paragraph 103).

In fact, although in a previous federal PSR, the defendant's father described the defendant "as an 'unruly' child," the defendant's father now states that "he understands the defendant's behavior based upon the abuse reported by the defendant" of which abuse the

6

defendant's father was not even aware until approximately 9 years ago. (PSR at Paragraph 104).

Coupled with this horrific period of sexual abuse by the defendant's stepfather which lasted for a period of years, a letter dated March 21, 1990 from David A. Rosin, M.D. stated that the defendant's "upbringing was described as being bounced from 'pillar to post and basically has been living on his own since age 16.'" (PSR at Paragraph 105).

Likewise, the defendant's mother stated that he was "'shuffled back and forth' between her and his father during the defendant's formative years." That the defendant's mother described the father as having "a dominant personality," and that the divorce which ensued when the defendant was 5 ½ years old "was long and ugly," and involved "much harassment and abuse," (PSR at Paragraph 106), no doubt began to cumulate in terms of psychiatric impact on the defendant when coupled with his being moved and shuffled around frequently, all the while during which he was repeatedly sexually molested by his stepfather for years. There can be no doubt that all of these negative early childhood and pre-adolescent experiences, in which the defendant had no volitional say, significantly shaped the substantial problems culminating with the instant case conduct.

The defendant himself in a report prepared by Ghent Psychological Practice on January 30, 1996, "described his father as a difficult man."  The defendant also "described his father as selfish." When the defendant's mother became intoxicated, "she made him perform oral sex on her," and "sexually and emotionally abused" the defendant.  The defendant "grew up in an alcoholic atmosphere," in which his biological father, a former police officer, became a convicted felon and his mother also had a felony conviction for distribution of cocaine and even "smuggled drugs into a prison." (PSR at Paragraph 108). Again, this additional sexual and emotional abuse by the defendant's mother and the

alcoholic environment in which he was raised further underscores the profound mitigation and extenuation pervading the instant case in terms of the defendant's conduct. It should be no surprise to anyone that a child/young teenager exposed to such influences and so deeply sexually and emotionally abused without being able to have any say in the matter would greatly influence later conduct in life as it apparently has.  Indeed, a forensic report dated February 28, 2018 confirms that the defendant "indicated he was physically and sexually abused by his mother and stepfather" from age 5 until age 16. (Paragraph 113).

The defendant's first marriage in 1991 resulted in a daughter (Tori) being born. Although the defendant tried to maintain his relationship with his daughter, he reports that "it soured after Tori was 18 years old and he did not give her money that she requested." (Paragraph 110).

The defendant married his present wife, co-defendant Christina Danielle Patterson, in 1998, from which 2 daughters were born, Rayne (age 17) and Sirena (age 15). (Paragraph 111).  The defendant also has another child, Kalin Brown (age 29), born of a non-marital union.  While the defendant "established a relationship with Kalin," the defendant reports the relationship has been severed completely since his arrest," noting that "'she has done nothing but cause trouble and steal.'" (Paragraph 112)

With respect to the defendant's physical condition, he has suffered from a litany of physical ailments, including a laminectomy (removal of a portion of the vertebral bone) due to a 2003 automobile accident (Paragraph 118); and the apparent prognosis for the defendant's disability is "permanent with no improvement anticipated." (Paragraph 119).

In 2005, the defendant suffered injuries while treating his swimming pool with a chlorine-based chemical that resulted in skin exposure as well as inhalation and swallowing of the chemical.  The defendant ultimately "experienced temporary blindness" and

subsequently underwent a surgical repair of his right upper eyelid. (Paragraph 120).

In a letter dated June 20, 2006, The Center for Pain Management described continuing pain primarily from the defendant's earlier orthopedic injuries, the prognosis for which "disability remained permanent with no improvement anticipated." The defendant was also prescribed Oxycontin (for pain), Neurontin, Ambien (for sleep), and Wellbutrin (an antidepressant). (Paragraph 121).

On December 31, 2008, the defendant underwent significant spinal surgery. (Paragraph 122).

Not quite four years later, an April 26, 2012, a letter from the defendant's primary care physician, Donald Holzer, M.D., described numerous medical and therapy strategies to deal with the defendant's chronic pain, difficulty walking, and chronic insomnia. An "evaluation revealed no change in his condition," and the defendant "remained permanently disabled and was unable to seek gainful employment." The defendant was prescribed a further myriad of medications to address pain, inattention, fatigue, chronic insomnia, and the defendant's mood. (Paragraph 123).

On June 6, 2012, the defendant sustained new significant orthopedic injuries to his elbow, radius, and ulna in an accident and had rods and bolts surgically implanted to repair his left arm. He reported post-accident trouble with memory, confusion, and concentration, and a neurological assessment concluded that the accident has caused a concussion with loss of consciousness. (Paragraph 124).

On April 14, 2017, the defendant was admitted to the hospital for a rectal perforation requiring "exploratory surgery with sigmoid resection and" a resulting colostomy bag. (Paragraph 128). While not specifically reflected in the PSR, when the defendant was initially incarcerated in connection with the instant offenses, his colostomy bag remained in

place and created significant jail medical management issues, infections, pain, and

attendant further emotional issues for the defendant. Ultimately, he was more recently

transferred from the Western Tidewater Regional Jail to the hospital where his colostomy

was reversed, albeit at a point in time much later than earlier medical advice than

recommended.

With respect to the defendant's mental and emotional health, a psychological

evaluation of October 14, 2008 described the defendant as reporting "that he had

experienced depression throughout his life on an intermittent basis." He received a

diagnosis of:

> major depressive disorder, pain disorder associated with both
> psychological factors and medical conditions and avoidant
> personality disorder. <u>The therapist's impressions were that
> Patterson has persevered through numerous significant
> stressors in his life</u>.  The defendant's pain, complicated
> bereavement concerning his mother and childhood trauma
> were issues to be addressed.

(Paragraph 134) (emphasis added).

Catherine Greene, Ph.D., Tidewater Psychotherapy Services in Virginia Beach, wrote a

letter dated July 9, 2012 to the Social Security Administration diagnosing the defendant with

post-traumatic stress disorder (PTSD), panic disorder with agoraphobia and major

depressive disorder. Dr. Greene noted significant public social anxiety resulting in "heart

palpitations, shortness of breath, nervousness and tremors when he is exposed to public

situation."  Dr. Greene further opined that the defendant's:

> depression causes him to be tearful, experience low self-
> esteem, agitation, anger ,low frustration tolerance, feelings of
> hopelessness, guilt, burdensome feelings, and suicidal ideation
> The defendant's PTSD and depression hinder his ability to cope
> with frustration and stress associated with any employment.
> Further, his ability to process information and learn and retain
> new material would be compromised due to the medication he

takes to control his chronic pain.

(Paragraph 135).

During this general timeframe, the defendant was prescribed at least 12 different medications to control his panoply of physical and mental conditions.  As late as February 28, 2018, in a federal forensic report, the defendant was diagnosed with major depressive disorder, with anxious distress, recurrent episode, mild; stimulant (cocaine) use disorder; and opioid use disorder."   (Paragraph 136).

The defendant's current functioning requires four prescription medications at Western Tidewater Regional Jail including "buspirone (anxiety), fluoxetine (depression), lithium carbonate (manic depression) and mirtazapine (depression)." (Paragraph 144).

In an effort at self-improvement, the defendant exhibited to "the probation officer certificates of completion for several Southeastern Ministries Discipleship bible study programs." and he also reported participating in anger management courses while in the jail. (Paragraph 145).

 The PSR, under the "Substance Abuse" section, details a long history of polysubstance abuse, no doubt driven in large measure by the long and complicated history of physical pain, and sexual and emotional abuse.  Defense counsel respectfully submits that a recommendation by this Court to the Bureau of Prison for participation in the RDAP program would be appropriate and constructive.

The defendant has earned a GED (Paragraph 156), and ultimately received a Bachelor of Science degree in Healthcare Services.  (Paragraph 159).  He also received a Master of Business Administration in Healthcare Management.  He has additional education in bible studies and healthy sciences. (Paragraph 161-163).

From 2003-2013, the defendant and his wife began operating "Critical Care

11

Concepts in Suffolk." (Paragraph 170). The company focused on flight delivered paramedical and emergency medical services. (Paragraph 171).

In summing up the defendant's history and characteristics, the PSR is both remarkable and noteworthy for what could only be described as nearly a life-long period of sexual and emotional abuse beginning as a young child, peppered with a number of serious medical conditions and significant, pertinent, and relevant emotional and psychiatric entities and disturbances. Accordingly, the defendant respectfully submits that, consistent with long-standing traditions in American Criminal Justice proceedings, a modification or softening of a sentence for offense conduct no doubt substantially affected by such long-standing abuse and diminished mental capacity is warranted.

Given the totality of the circumstances in defendant's ill-starred physical and emotional life, the defendant respectfully submits that a sentence, substantially lower than the bottom end of the advisory guidelines is warranted in the interest of justice and fairness, of 54 months (4 and ½ years), which defendant respectfully submits, under all of the circumstances, is sufficient but not greater than necessary.

<u>CONCLUSION</u>

For the foregoing reasons, the defendant respectfully submits that the Court should impose a sentence substantially lower than the bottom end of the advisory guidelines of 54 months (4 and ½ years), which defendant respectfully submits, under all of the circumstances, is sufficient but not greater than necessary.

RICHARD ALLEN PATTERSON
By:_____/s/_____

                                 Of counsel

Andrew M. Sacks, Esquire, VSB#: 20082
Stanley E. Sacks, Esquire, VSB# 04305

Jill R. Schmidtke, Esquire, VSB#46447
Attorneys for defendant Richard Allen Patterson
SACKS & SACKS, P.C.
Town Point Center
150 Boush Street, Suite 801
Norfolk, VA 23510
Telephone: (757) 623-2753
Facsimile: (757) 274-0148
E-mail: andrewsacks@lawfirmofsacksandsacks.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

William Buchanan Jackson, Esquire
Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510-1624
Phone: 757-441-6331
Fax: 757-441-6689
E-mail: william.jackson3@usdoj.com



/s/
Andrew M. Sacks, Esquire

Andrew M. Sacks, Esquire, VSB# 20082
Stanley E. Sacks, Esquire, VSB# 04305
Jill R. Schmidtke, Esquire, VSB# 46447
Attorneys for defendant Richard Allen Patterson
SACKS & SACKS, P.C.
Town Point Center
150 Boush Street, Suite 801
Norfolk, VA 23510
Telephone: (757) 623-2753
Facsimile: (757) 274-0148
E-mail: andrewsacks@lawfirmofsacksandsacks.com

F:\JC\PATTERSON Richard\FEDERAL CASE 2017\PositionSentFactors10 31 18.docx