UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 2:17cr114 |
| v. ) | |
| ) | |
| RICHARD ALLEN PATTERSON, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America now submits its position on the defendant's sentencing factors. In the Presentence Investigation Report (PSR), the U.S. Probation Office determined that the advisory Guidelines sentencing range is a term of 121–151 months' imprisonment from grouping Count Six, felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1), and Count Eight, obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2).

The defendant has a Total Offense Level of 30, which includes a four-point enhancement under U.S.S.G. § 2K2.1(b)(1)(B) because the offense involved at least 23 firearms, a four-point leadership-role enhancement under § 3B1.1(a) because he directed his wife and three daughters to help him obstruct the investigation against him, and a two-point obstruction enhancement under § 3C1.1 based on those efforts. He warrants no acceptance reductions under § 3E1.1 And he has a Criminal History Category of III.

The Government has reviewed the PSR and has conferred with the U.S. Probation Officer and with defense counsel. The defendant has three outstanding objections—to applying the role enhancement, to applying the obstruction enhancement, and to losing the reduction for acceptance of responsibility. None of those objections has merit.

For the reasons outlined below, the Government submits the top of the guidelines range—151 months—would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.     OBJECTIONS**

The Court should overrule the defendant's three objections.

A. <u>The defendant was an organizer or leader in extensive criminal activity involving at least five participants.</u>

The defendant baldly claims that "the evidence does not support that there were either 'five or more participants' or that the 'criminal activity… was otherwise extensive.'" Def.'s Position Paper, at 1. "If the defendant's objection to a particular PSR finding fails to articulate the reasons why the facts asserted are unreliable, untrue or inaccurate, the district court need not undertake an in-depth review." *United States v. Williams*, 152 F.3d 294, 301 (4th Cir. 1998). Because the defendant does not give any specific reason why the PSR is inaccurate, the Court should summarily overrule the objection.

The defendant's own statement of facts shows that he was an organizer or leader in a criminal activity involving five participants and that the criminal activity was extensive, satisfying both prongs of § 3B1.1(a). Those participants include the defendant; his wife and co-defendant, Christina Patterson; their two underage daughters, S.P. and R.P., and "another individual" who "remove[d]" "property from [the Pattersons'] former business office to prevent law enforcement agents from seizing it." SOF ¶¶ 11–15. The PSR adds a sixth participant—an older daughter, K.B. At the defendant and Mrs. Patterson's direction, K.B. swore out a warrant for a government witness's arrest to impeach the witness's credibility and to prevent the witness from bringing ATF agents onto business property that the Pattersons had recently transferred to her as part of a scheme

to undermine an earlier search of that property. Mrs. Patterson was arrested after dropping K.B. off at the magistrate's office. *See* PSR ¶ 20.

The criminal activity was extensive because at every turn of the investigation, the defendant and his family tried to obstruct justice. They tried to get the electrician to whom the defendant had recently transferred a rifle to create a false bill of sale exonerating him. The defendant surreptitiously recorded state probation officers in an attempt to manufacture additional untimely and improper evidence, violating the probation office's policy in doing so. *See* PSR ¶ 17. He turned his jail cell into the hub for his family conspiracy, coaching his wife and daughters through jail calls and letters to perjure themselves and to make false statements to law enforcement, threatening to kill himself if they did not comply. *See* PSR ¶ 143. Indeed, he turned his wife into a Trojan horse for the government. After being charged as part of the conspiracy, Mrs. Patterson seemingly agreed to cooperate with the government. During the debrief session she implicated the defendant on most of the charges against him. But agents soon realized that she was still trying to undermine the government's case at trial by contradicting the accounts of several key witnesses. *See* PSR ¶ 26.

Most egregiously, the defendant and his wife tried to defraud the Court by changing their business address after ATF searched the property. He then turned around and moved to suppress the search warrant for failing to include that new address. In a written opinion, the Court concluded that the defendant was "disingenuous" in making that argument. ECF No. 64, at 10. Now the defendant asks the Court not to apply the obstruction enhancement. That objection "would create a new definition of chutzpa." *Embury v. King*, 361 F.3d 562, 566 (9th Cir. 2004). The Court should overrule the objection.

3

> B. <u>The obstruction enhancement was properly applied through grouping, and the defendant committed significant further obstruction during the investigation.</u>

The defendant further argues that since he pleaded to an obstruction count, a two-point obstruction enhancement would be "impermissible double counting." Def.'s Position Paper, at 2. The defendant fails to show where there is double-counting. Because "the defendant is convicted both of an obstruction offense … and an underlying offense … , the count for the obstruction offense will be grouped with the count for the underlying offense." U.S.S.G. § 3C1.1 cmt. n.8. More importantly, "[t]he offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2-level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater." *Id.* Here, the offense level for the gun count with the two-point obstruction enhancement is greater than that of the obstruction count, so the enhancement applies without double-counting. *See* PSR ¶ 38.

Even if the defendant received multiple penalties for obstruction, there is good reason. Although he insists that "no such further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself," Def.'s Position Paper, at 2, he again "fails to articulate the reasons why the facts asserted are unreliable." *Williams*, 152 F.3d at 301.

What is more, the defendant's own statement of facts undercuts his argument. After trying to get the electrician to create false evidence—the conduct charged in Count Eight—the defendant directed his wife "to change the address of their business." SOF ¶ 11. He "coached [her] on how to give false statements to claim ownership of the … firearms and claim that she, and not [he], advertised firearms on online marketplaces." SOF ¶ 13. He directed her "to remove property from their former business office to prevent law enforcement agents from seizing it." SOF ¶ 14. And he "directed his daughters to destroy evidence, including jail correspondence … and attempted to

influence the testimony of one daughter he believed would testify before the grand jury." SOF ¶ 15. The Court should hold the defendant to his Statement of Facts and overrule this objection.

### C. The defendant does not accept responsibility for his crimes.

Finally, the defendant does not have a good faith basis for objecting to the PSR's denying him a reduction for acceptance of responsibility. The PSR did not assign to the defendant the initial two-point reduction under § 3E1.1(a), because "the defendant has not clearly demonstrated acceptance of responsibility for the offense." PSR ¶ 46. To support its conclusion, the PSR pointed to the defendant's efforts to obstruct justice. He "directed his wife to provide false information regarding the combination of the [gun] safe[] to case agents during the investigation." PSR ¶ 34. He "instruct[ed] his wife to change the address of the kennel/residence on several documents and websites after [his] arrest … in an attempt to undermine the search warrant." *Id.* He directed her to "remove[] documents and evidence from their residence" after discovering that ATF agents were going to search the property again. *Id.* And he "coached his juvenile daughters to perjure themselves" and provide false alibis at trial. *Id.*

"[M]erely pleading guilty does not entitle one to a downward adjustment." *United States v. McKenzie-Gude*, 671 F.3d 452, 463 (4th Cir. 2011) (internal quotation marks omitted); *see also* U.S.S.G. § 3E1.1 cmt. n.3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). Rather, to be eligible for this downward departure, "the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996). And evidence of admitting guilt "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*

5

The PSR is generous to the defendant by citing only those obstruction efforts as evidence that he does not accept responsibility, which alone support denying an acceptance reduction. The biggest reason to overrule the objection is that after "acknowledge[ing] involvement in the instant offense" and "agree[ing] to [the Statement of Fact's] accuracy," PSR ¶ 35, he recanted that statement and proclaimed his innocence in letters to the Court. *See, e.g.*, ECF No. 115. The defendant's position paper ignores those letters.

Another reason the defendant does not accept responsibility is that he contradicts the Statement of Facts in objecting to the leadership-role and obstruction enhancements. He cannot dispute those agreed-upon facts from one side of his mouth while, at the same time, claim that he takes responsibility for them.

The Court should overrule this objection as well.

## II. BACKGROUND

On September 21, 2017, a grand jury sitting in Norfolk returned an eight-count superseding indictment that charged the defendant for gun and obstruction crimes. On May 2, 2018, the defendant pleaded guilty to Counts Six and Eight under a plea agreement. The Court accepted the plea and ultimately scheduled the sentencing hearing for November 7, 2018.

## III. ARGUMENT

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Id.* (quoting 28 U.S.C. § 991(b)(1)(B)). In its recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the guidelines play in

achieving "[u]niformity and proportionality in sentencing" and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1347 (2017).

The Fourth Circuit has provided the following guidance in the wake of *Booker*: "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and" the 18 U.S.C. § 3553(a) factors "before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). So sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

 A. Nature and Circumstances of the Offense

The Government summarizes much the nature and circumstances of the offense above. This is not a garden-variety felon-in-possession case. The defendant owned at least 23 firearms during and after serving a term of federal supervised release that this Court had imposed on him. And that is only a small part of the criminal conduct—the defendant's requested sentence might have satisfied the sentencing factors if he simply stopped there.

But he crossed the event horizon once he learned about the charges against him. Since then, he has used every opportunity to interfere with the investigation against him. Not even unrelated criminal investigations are safe from his meddling. *See* PSR ¶¶ 72–73.

He dragged his entire family down with him. His wife is now a felon and spent a year in jail for him. He directed his two underage daughters to commit felonies for him. He threatened to kill himself to keep his wife from cooperating with the government and to keep his 15-year-old

daughter from getting cold feet and refusing to lie on the stand for him. PSR ¶ 142. His older teenage daughter is now emancipated from him. He even tried to defraud his own attorney and the Court.

The defendant had no shame in his obstructionist schemes. He tried to get the electrician to create a false bill of sale for him hours after his wife gave ATF that witness's contact information. He tried to manufacture false evidence by secretly recording the probation officer's statement about gun access five days after the ATF had searched his safe. He tried to trick the Court into throwing out a search warrant by changing his registered business address two months after the ATF had executed the warrant. And he tried to escape justice by fooling the professional medical examiner into concluding he was incompetent to stand trial. *See* PSR ¶ 141. The examiner saw right through his ruse. *Id.* The defendant's hubris made his schemes that much easier to detect.

The defendant's egregious conduct supports a sentence at the top of the guidelines range.

B. History and Characteristics of the Defendant

The defendant's criminal history alone is enough to warrant a sentence at the high end of the guidelines range. At 15 pages long, it lists all kinds of convictions: impersonating a police officer, contributing to the delinquency of a minor, petit and grand larceny, assault and battery, making a false statement, forgery, and perjury. On the conviction for contributing to the delinquency of a minor, "[t]he defendant was originally charged with Carnal Knowledge of a 13-year-old female" and "was filed by the victim's mother." PSR ¶ 54.

As to the false-statement felony conviction, this Court sentenced the defendant to four months in prison and three years of supervised release. While on federal pretrial release, the defendant and his wife "were involved in bestiality," including "sexual acts with a male dog." PSR ¶ 71. And "the Pattersons had the front toenails of the dog removed in order to engage in continued

sexual acts with the dog." *Id.* Mrs. Patterson faces bestiality and animal-cruelty charges in state court for her role in that crime. The defendant will likely face similar charges after he is sentenced here.

The defendant also has three felony convictions for forgery and perjury; he was sentenced to two years of supervised probation the day before ATF agents searched his home and recovered at least 15 guns and hundreds of rounds of ammunition. The criminal conduct underlying those convictions included the defendant's filing fraudulent liens on his vehicles to avoid their seizure to satisfy a civil judgment against him. PSR ¶ 66.

The PSR lists 37 charges against the defendant that were later dismissed, including six additional charges related to impersonating a police officer or medical personnel, PSR ¶¶ 77–78, 81–83, and ten related to assault and battery or violent threats, PSR ¶¶ 86, 88, 92–94, 96, 98–100. For the past thirty years, the defendant has received leniency from the courts.

The defendant's fraudulent schemes extended to his kennel business. "[T]he immunization records were forged and veterinarian records did not match the immunization records. There are also some issues regarding possible tax fraud." PSR ¶ 70. That investigation is ongoing.

C. Other Factors To Be Considered Under Section 3553(a)

The defendant's years-long, illegal stockpiling of firearms and his willingness to involve his own family in his criminal scheme show that he lacks respect for the law and safety of his fellow citizens. Prior short sentences, court supervision, and more than thirty dismissed criminal charges show that a lengthy sentence would deter the defendant and others from committing new crimes. The defendant's criminal history and his refusal to stop breaking the law, even in jail, show that he will recidivate. The seriousness of the offense, providing just punishment, public safety,

and general and specific deterrence all support a sentence at the top of the guidelines range. The defendant's recommended 54-month sentence is too low to satisfy any of those factors.

## IV. CONCLUSION

Based on all of the above, the Government's recommended sentence is sufficient but not greater than necessary.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:       /s/
William B. Jackson
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6331
Facsimile: (757) 441-3205
E-mail: william.jackson3@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 31st day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record including:

>Andrew M. Sacks, Esq.
>150 Boush Street, Suite 501
>Norfolk, Virginia 23510
>Telephone: (757) 623-2753

  I hereby certify that on the 31st day of October, 2018, I sent by electronic mail a true and correct copy of the foregoing to the following:

>Kristie M. Milby
>U.S. Probation Officer
>827 Diligence Drive, Suite 210
>Newport News, Virginia 23606

>/s/
>William B. Jackson
>Assistant United States Attorney
>Attorney for the United States
>United States Attorney's Office
>101 West Main Street, Suite 8000
>Norfolk, Virginia 23510
>Telephone: (757) 441-6331
>Facsimile: (757) 441-3205
>E-mail: william.jackson3@usdoj.gov